**DeNITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis (SP-0016)
Ross H. Schmierer, Esquire (RS-7215)
525 Route 73 North, Suite 410
Marlton, NJ 08053
(856) 797-7083
sdenittis@denittislaw.com
rschmierer@denittslaw.com

**LAW OFFICES OF TODD M.
FRIEDMAN, PC**
Todd M. Friedman, Esq.
Tom Wheeler, Esq.
(*Pro hac Vice Applications Forthcoming*)
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
tfriedman@toddflaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL SAUER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>vs.<br><br>SUBARU OF AMERICA, INC.,<br><br>    Defendant. | Civil Case No.:<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff Cheryl Sauer, individually and on behalf of all others similarly situated, alleges the following:

## NATURE OF THE CASE

1.      Plaintiff CHERYL SAUER bring this action individually for herself and on behalf of all persons who purchased or leased certain vehicles equipped with uniform and uniformly defective engines designed, manufactured, distributed, warranted, marketed, and sold or leased by SUBARU OF AMERICA, INC. ("Subaru" or "Manufacturer"), as described below.

2.      The vehicles at issue all contain turbo charged engines, including but not limited to the 2014 Subaru Forester XT, 2015 Subaru Forester XT, 2016 Subaru Forester XT, 2014 Subaru WRX, 2015 Subaru WRX, 2016 Subaru WRX, 2014 Subaru WRX STi, 2015 Subaru WRX Sti,

and 2016 Subaru WRX STi (the "Class Vehicles").

3. This action is brought to remedy violations of law in connection with Subaru's design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' engines ("Engines") have a serious design defect that causes the engines to suffer damage due to the engines being tuned too highly. Additionally, Defendant applied an undisclosed fix ("the Fix") during a "claimed" mandatory emissions recall to the Engines in an attempt to fix the design defect in the Engines that rendered the Class Vehicles unusable due to intermittent stalling and sudden accelerating following the application of the Fix. The Fix was initially issued on or about February 2016.

4. The Engines are manufactured in substantially the same manner in all Class Vehicles, and does not vary from vehicle to vehicle in their construction, operation, or control. Additionally, the Fix was uniformly applied to the Engines of the Class Vehicles which did not vary from vehicle to vehicle in application.

5. Plaintiff believes that the damage caused by the Engines from being tuned too highly and further loss of control issues caused by the Fix represents a serious risk to drivers of the Class Vehicles and also significantly impacts the value of the Class Vehicles.

6. In consideration for the purchase of the Class Vehicles, Manufacturer issued and supplied to Plaintiff and the Class Members several written warranties, as well as other standard warranties fully outlined in the Manufacturer's Warranty Booklet.

7. Prior to the manufacture and sale of the Class Vehicles, Subaru knew of the Engine Defects and issues relating to the Fix through internal sources, testing, and consumer complaints available online and in owner forums. Yet despite this knowledge, Subaru failed to disclose and actively concealed the Engine Defect from Class Members and the public, without remedying the

internal issue.

8. Further, Subaru issued an "emissions recall" ("the Recall") purported to resolve an issue in the ignition timing. In reality, this recall secretly updated the operating system on the Class Vehicles and detuned the Engines in an attempt to fix the damage caused by them.

9. The Recall was not for emissions, but by claiming it was an "emissions recall," a Class Member would be unable to renew their vehicles registration without taking in their Vehicles for servicing. Subaru forced the Recall on consumers by threatening the ability of Class Members' to renew their vehicle registrations.

10. As a result of the undisclosed operating system patch included in the Recall, Plaintiff's 2014 XT and other Class Vehicles began to experience Engine problems, including the Vehicles beginning to uncontrollably surge and stall while driving.

11. When Plaintiff, and other putative Class members, attempted to bring this issue to Defendant caused by the Fix, Defendant disingenuously tried to shift blame away from the Fix and failed to provide a remedy to the problem, instead blaming it on the Engine itself rather than the software patched by the Fix. Based on Plaintiff's information as a salesman for Defendant, Defendant knew all along that this problem was widespread, and was not able to be remedied, which they nevertheless kept selling to consumers, like Plaintiff.

12. The defects listed below violate the express written warranties issued to Plaintiff by manufacturer, as well as the implied warranty of merchantability.

13. Plaintiff brought the vehicle to seller and/or other authorized service dealers of manufacturer to attempt repair on the above referenced defects, but Defendant's representatives failed to offer a solution to the problems caused by the Fix and failed to remedy the underlying problem of the defective Engine system.

14.     Plaintiff, and Class Members, were made to either drive an unsafe and unstable Subject Vehicle as caused by the Engine defects as well as defects caused by the Fix, or were required to leave the Subject Vehicle for multiple months without compensation until a substitute Engine could be provided, according to Defendant's representatives.

15.     Plaintiff, and Class Members, provided Manufacturer through Seller and/or other authorized dealers of Manufacturer sufficient opportunities to repair the vehicle.

16.     As a result of Defendant's alleged misconduct, Plaintiff and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the Engine Defects and defects caused by the Fix, and Defendant has not provided a permanent remedy for these Defects. Furthermore, Plaintiff and the Class Members justifiably lost confidence in the Class Vehicles' reliability and said defects have substantially impaired the value of the Class Vehicles to Plaintiff and the putative class.

## JURISDICTION & VENUE

17.     Jurisdiction is proper under *28 U.S.C. § 1331* because this matter arises out of a question of federal law, in particular the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301 et. seq.  Thus, this Court has federal question subject matter jurisdiction.  The Court has supplemental jurisdiction over the remaining state law claims.

18.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) because the sole Defendant resides in this judicial district.

## PARTIES

19.     Plaintiff, CHERYL SAUER ("Plaintiff"), is an individual who leased subject vehicle in the State of California.

20.     SUBARU OF AMERICA, INC. ("Defendant"), is a domestic corporation duly

4

organized under the laws of the State of New Jersey, and engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services. Defendant is also in the business of marketing, supplying and selling written warranties to the public at large through a system of authorized dealerships.

21.     The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

22.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

23.     As stated herein, Plaintiff entered a lease agreement for a new 2014 Subaru Forester XT on April 23, 2013.

24.     Plaintiff leased this vehicle for personal and family use.

25.     Pursuant to the lease, Plaintiff was provided an express warranty concerning the repair and maintenance of the vehicle for the duration of the lease.

26.     Plaintiff brought her vehicle into the dealership for the mandatory emissions service, referred to above as the Fix, around March 2016.

27.     In the process of doing the Fix, Defendant also re-tuned the Engines in an attempt to fix the over tuning defect present in the Engines. Defendant did not disclose that it was re-tuning the Engines as part of the Fix.

28.     Following the Fix being applied, Plaintiff's Vehicle began exhibiting unexpected surging and stalling in the Engine.

29.     Plaintiff presented this problem to Defendant, but Defendant initially refused to analyze, correct, replace, or otherwise fix the issues with Plaintiff's Vehicle caused by the Fix.

30.     Defendant also repeatedly failed to correct the issues caused by the Fix when presented with Plaintiff's Vehicle.

31.     After multiple complaints by Plaintiff, Defendant finally offered to potentially replace the Engine in Plaintiff's Vehicle as a correction to the problems caused by the Fix, however also told Plaintiff that the replacement would not be available for multiple months.

32.     Defendant further refused to replace or buyback Plaintiff's Vehicle.

33.     The defects in the Engine and defects caused by the Fix significantly decreased the safety, drivability, and value of Plaintiff's Vehicle.

34.     Additionally, Plaintiff first learned of the over tuning defect on or around March 2016 as a result of "the Fix."

## CLASS ALLEGATIONS

35.     Plaintiff brings this action individually and on behalf of all others similarly situated, as a member the proposed Class and California Class.

36.     Plaintiff brings this class action on behalf of herself and all other similarly situated

members of the proposed class (the "Class"), defined as follows:

> **All persons within the United States who purchased or leased a Class Vehicle with the Engine. A "Class Vehicle" is defined as any of Defendant's Vehicles that contained a turbocharged engine and includes at least the following models: 2014 Subaru Forester XT, 2015 Subaru Forester XT, 2016 Subaru Forester XT, 2014 Subaru WRX, 2015 Subaru WRX, 2016 Subaru WRX, 2014 Subaru WRX STi, 2015 Subaru WRX Sti, and 2016 Subaru WRX STi.**

37.     Plaintiff additionally brings a Class claim on behalf of herself and all others similarly situated members of the proposed California Class (the "California Class," and with "the Class," "the Classes"), defined as follows:

> **All California Residents who purchased or leased a Class Vehicle with the Engine in California. A "Class Vehicle" is defined as any of Defendant's Vehicles that contained a turbocharged engine and includes at least the following models: 2014 Subaru Forester XT, 2015 Subaru Forester XT, 2016 Subaru Forester XT, 2014 Subaru WRX, 2015 Subaru WRX, 2016 Subaru WRX, 2014 Subaru WRX STi, 2015 Subaru WRX Sti, and 2016 Subaru WRX STi.**

38.     Plaintiff represents, and is a member of, the Class, consisting of all persons within the United States who purchased or leased a Class Vehicle with the Engine.

39.     Plaintiff also represents, and is a member of, the California Class, consisting of all California Residents who purchased or lease a Class Vehicle with the Engine in California.

40.     Defendant, its employees, and agents are excluded from the Classes. Plaintiff does not know the number of members in The Classes, but believes the Classes members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

41.     The Classes are so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of the Classes members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Classes includes thousands of members.

Plaintiff alleges that the Classes members may be ascertained by the records maintained by Defendant.

42.     The defect that Plaintiff and the Classes Members experienced was the result of the Engines being over tuned and undisclosed modifications made as part of the Fix.  As various complaints of this issue are present online and multiple consumers have complained across the country, it is clear that Subaru knew or should have known that the defects that were present with the Engine and the Fix, which could and did cause damage to the Engine as well as intermittent stalling and accelerating of Class Vehicles. Yet, incredibly, Subaru continued to deny the existence of this issue, thus presenting a continued risk to the Classes members' health and safety.

43.     Prior to the manufacture and sale of the Class Vehicles, Subaru knew of the Engine Defect and Fix Defect through, or as evidenced by, sources such as pre-release design and testing information; technical service bulletins; consumer complaints made directly to Subaru and/or posted on public online forums; testing done, including testing in response to consumer complaints; and previous lawsuits on the same issue.

44.     Plaintiff and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant sold Classes members Vehicles with a defect and a warranty to cover repair of the defect, but then refused to honor said warranty.  Defendant additionally introduced new defects into the vehicle and failed to adequately repair those defects as part of the Fix.  This caused the Classes' members to suffer a loss of value for their Vehicles.

45.     Common questions of fact and law exist as to all members of the Classes which predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions, which do not vary between Classes members, and which may be determined without reference to the individual circumstances of any Classes members, include,

but are not limited to, the following:

(a)      Whether Defendants made misrepresentations with respect to the Classes Vehicles sold to consumers;

(b)      Whether Defendants profited from the sale of the Class Vehicles that exhibited Engine defects and the Fix defects;

(c)      Whether Defendants violated California Bus. & Prof. Code § 17200, et seq. and California Bus. & Prof. Code § 17500, et seq.;

(d)      Whether Defendants breached the warranty provided to Classes Members;

(e)      Whether Defendant breached the implied warranty provided to Classes Members;

(f)      Whether Plaintiff and Classes Members are entitled to equitable and/or injunctive relief;

(g)      Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and Classes Members; and

(h)      The method of calculation and extent of damages for Plaintiff and Classes Members.

46.      As a person that leased a Class Vehicle that had the defect in the Engine and further defect caused by the Fix, Plaintiff is asserting claims that are typical of the Classes.

47.      Plaintiff will fairly and adequately protect the interests of the members of The Classes.  Plaintiff has retained attorneys experienced in the prosecution of class actions.

48.      A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Classes members is impracticable.  Even if every Classes member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous

issues would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Classes member.

49.    The prosecution of separate actions by individual Classes members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Classes members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

50.    Defendant has acted or refused to act in respects generally applicable to The Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

<u>COUNT I</u>
<u>BREACH OF WRITTEN WARRANTY</u>
<u>PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT</u>
<u>MANUFACTURER</u>
*Individually and on behalf of the Class*

51.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

52.    Plaintiff is a leasor of a consumer product who received the Subject Vehicle during the duration of a written warranty period applicable to the Subject Vehicle and who is entitled by the terms of the written warranty to enforce against Manufacturer the obligations of said warranty.

53.    Manufacturer is a person engaged in the business of making a consumer product directly available to Plaintiff.

54.     Seller is an authorized dealership/agent of Manufacturer designed to perform repairs on vehicles under Manufacturer's automobile warranties.

55.     The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section, 2301 et. Seq. ("Warranty Act") is applicable to Plaintiff's Complaint in that the Subject Vehicle was manufactured, sold and purchased after July 4, 1975, and costs in excess of ten dollars ($10.00).

56.     Plaintiff and all Class Members' purchase and lease of the Class Vehicles were accompanied by written factory warranties for any non-conformities or defects in materials or workmanship, comprising an undertaking in writing in connection with the purchase of the Class Vehicles, to repair the Class Vehicles, or take other remedial action free of charge to Plaintiff and the Class Members with respect to the Class Vehicles in the event that the Class Vehicles failed to meet the specifications set forth in said undertaking.

57.     Said warranties were the basis of the bargain of the contract between the Plaintiff and Classes Members and Manufacturer for the sale of the Class Vehicles to Plaintiff and the Class Members.

58.     Said purchase of the Class Vehicles was induced by, and Plaintiff and the Class Members relied upon, these written warranties.

59.     Plaintiff and the Class Members have met all of their obligations and preconditions as provided in the written warranties.

60.     As a direct and proximate result of Manufacturer's failure to comply with its express written warranties, Plaintiff and the Class Members have suffered damages and, in compliance with 15 U.S.C. §2310(d), Plaintiff is entitled to bring suit for such damages and other equitable relief.

## COUNT II
## BREACH OF IMPLIED WARRANTY
## PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
## MANUFACTURER
*Individually and on Behalf of the Class*

61.     Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

62.     The Class Vehicles purchased by Plaintiff and the Class Members were subject to an implied warranty of merchantability as defined in 15 U.S.C. §2301(7) running from the manufacturer to the intended consumer, Plaintiff and the Class Members herein.

63.     Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff and the Class Members.

64.     Manufacturer is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Manufacturer has entered into a contract in writing within ninety (90) days of purchase to perform services relating to the maintenance or repair of a motor vehicle.

65.     Pursuant to 15 U.S.C. §2308, the Class Vehicles were impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which the Class Vehicles were intended.

66.     The Class Vehicles were warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

67.     The above described defects in the Class Vehicles render the Class Vehicles unfit for the ordinary and essential purpose for which the Class Vehicles were intended.

68.     As a result of the breaches of implied warranty by Manufacturer, Plaintiff and the

Class have suffered and continue to suffer various damages.

**COUNT III**
**SONG –BEVERLY CONSUMER WARRANTY ACT**
*Individually and on Behalf of the California Class*

69.     Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

70.     Pursuant to Cal Civ. Code.  §1793.2, Plaintiff and the California Class Members have presented the Class Vehicles to Seller and/or other authorized service dealers of Manufacturer within the term of protection and have tendered the subject vehicle for (for the above-mentioned defects that substantially affect the use, value and safety of the Class Vehicles.

71.     Manufacturer, through Seller and/or other authorized dealerships, have been unable to repair said defects in the Class Vehicles, despite a reasonable number of attempts.

72.     Pursuant to Cal Civ. Code.  §1793.2, Plaintiff is entitled to a refund of the full purchase price of the vehicle, including all collateral charges and finance charges, and/or a replacement vehicle, plus all attorney fees and costs.

73.     Manufacturer has willfully violated the provisions of this act by knowing of its obligations to refund or replace the Class Vehicles to Plaintiff and the California Class Members, but failing to fulfill them.

**COUNT IV**
**SONG –BEVERLY CONSUMER WARRANTY ACT**
*Individually and on Behalf of the California Class*

74.     Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

75.     The Class Vehicles purchased by Plaintiff and Class Members were  subject to an implied  warranty  of  merchantability  as  defined  in  Cal.  Civ.  Code  §1790  running  from  the

Manufacturer to the intended consumer, Plaintiff and the Class Members herein.

76.     Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff.

77.     Manufacturer is prohibited from disclaiming or modifying any implied warranty under Cal. Civ. Code §1790.

78.     Pursuant to Cal. Civ. Code §1790, the Class Vehicles were impliedly warranted to be fit for the ordinary use for which the Class Vehicles were intended.

79.     The Class Vehicles were warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

80.     The above described defects in the Class Vehicles caused it to fail to possess even the most basic degree of fitness for ordinary use.

81.     As a result of the breaches of implied warranty by Manufacturer, Plaintiff and the California Class have suffered and continues to suffer various damages.

**Count V**
**Violation of the California False Advertising Act**
**(Cal. Bus. & Prof. Code §§ 17500 et seq.)**
*Individually, and on behalf of the California Class*

82.     California Business and Professions Code section 17500, et seq.'s prohibition against false advertising extends to the use of false or misleading written statements.

83.     Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold or leased the Class Vehicles to Plaintiff and California Class Members, and made false representations to Plaintiff and other putative class members in order to not make repairs to these vehicles, without remedying the true problem with the Engines.

84.     Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

85.     As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other California Class Members have suffered injury in fact and have lost money or property, time, and attention.  Plaintiff reasonably relied upon Defendant's representations regarding the Class Products. In reasonable reliance on Defendant's false representations that the Engine did not suffer from defects and that the Fix had not caused further problems, Plaintiff and other California Class Members suffered damage by being forced to drive unsafe Vehicles and decreasing the resale value of the Subject Vehicles.  Therefore Plaintiff and other California Class Members have suffered injury in fact.

86.     Plaintiff alleges that these false and misleading representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

87.     Defendant advertised to Plaintiff and other putative California Class members, through written representations and omissions made by Defendant and its employees, that the Class Products would be of a particular quality

88.     Thus, Defendant knowingly sold Class Products to Plaintiff and other putative California Class members.

89.     The misleading and false advertising described herein presents a continuing threat to Plaintiff and the California Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or

restrained.  Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant

to cease its false advertising, as well as disgorgement and restitution to Plaintiff and all California

Class Members Defendant's revenues associated with their false advertising, or such portion of

those revenues as the Court may find equitable.

**COUNT VI**
**Violation of Unfair Business Practices Act**
**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**
*Individually, and on behalf of the California Class*

90.     Plaintiff incorporates by reference each allegation set forth above.

91.     Actions for relief under the unfair competition law may be based on any business

act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur

as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to

provide evidence of a causal connection between a defendants' business practices and the alleged

harm--that is, evidence that the defendants' conduct caused or was likely to cause substantial

injury. It is insufficient for a plaintiff to show merely that the Defendant's conduct created a risk

of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition

covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

92.     California Business & Professions Code § 17200 prohibits any "unfair  . . business

act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein

also constitute "unfair" business acts and practices within the meaning of the UCL in that its

conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical,

oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

attributable to such conduct.  There were reasonably available alternatives to further Defendant's

legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right

16

to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

93.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

94.     Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the California Class.  Plaintiff and members of the California Class have suffered injury in fact due to Defendant's decision to knowingly sell defective Class Vehicles, and to fail to remedy the issue caused by the Fix.  Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the California Class.

95.     Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the California Class that the Class Products were of a certain luxury value and price, in order to induce them to spend money on said Class Products.  In fact, knowing that Class Products were not of a suitable quality to be sold, due to the defective Engine, Defendant unfairly profited from their sale.  Thus, the injury suffered by Plaintiff and the members of the Sub-California Class is not outweighed by any countervailing benefits to consumers.

96.     Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided.  After Defendant falsely represented the quality of the Class Products, Plaintiff and California Class members suffered injury in fact due to Defendant's sale of Class Products to them.  Defendant failed to take reasonable steps to inform Plaintiff and California Class members that the Class Products were in a permanently defective condition, due to the defects with the Engine. As such, Defendant took advantage of Defendant's

position of perceived power in order to deceive Plaintiff and the California Class members to purchase these Class Vehicles. Therefore, the injury suffered by Plaintiff and members of the California Class is not an injury which these consumers could reasonably have avoided.

97.     Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### FRAUDULENT

98.     California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

99.     The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

100.     Here, not only were Plaintiff and the California Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products under the basic assumption that they were of a suitable quality and merchantable condition, when in fact they were not suitable to be sold, and were being sold with an inherent defect in the Engine. Further, Defendant's implementation of the Fix without disclosing the full nature of it which caused further defects to manifest in the Subject Vehicles further caused them to be unsuitable to be driven. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

101.    As explained above, Defendant deceived Plaintiff and other California Class Members by representing the Class Products as being in a merchantable condition, and thus falsely represented the Class Products.

102.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

103.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

104.    As explained above, Defendant deceived Plaintiff and other California Class Members by representing the Class Products as not containing a defect, when they did in fact have such defect.

105.    Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and California Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.  Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

106.    Additionally, by violating the Song Beverly Act and Magnuson-Moss Warranty Act as described above, Defendant has engaged in unlawful conduct.

107.    These representations by Defendant is therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 et seq.

108.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant as set

forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## MISCELLANEOUS

109.    Plaintiff and Classes Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or that all such obligations or conditions are excused.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and members of the class respectfully pray for the following relief:

A.    Certification of the class under Fed. R. Civ. P. 23;

a.    An order certifying the Classes under Fed. R. Civ. P. 23 and appointing Plaintiff as Representative of the Classes;

b.    An order certifying the undersigned counsel as Classes Counsel;

c.    An order requiring Defendant, at its own cost, to notify all Classes Members of the unlawful and deceptive conduct herein;

d.    An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

e.    Actual damages suffered by Plaintiff and Classes Members as applicable or full restitution of all funds acquired from Plaintiff and Classes Members from the sale and lease of misrepresented Class Products during the relevant class period;

f.    Punitive damages, as allowable, in an amount determined by the Court or jury;

g.      Any and all statutory enhanced damages;

h.      All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

i.      Pre- and post-judgment interest; and

j.      All other relief, general or special, legal and equitable, to which Plaintiff and Classes Members may be justly entitled as deemed by the Court.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: October 12, 2018               **DeNITTIS OSEFCHEN PRINCE, P.C.**

                        By:    /s/ Ross H. Schmierer
                               Ross H. Schmierer, Esq.
                               525 Route 73 North, Suite 410
                               Marlton, New Jersey 08053
                               (T): (856) 797-9951
                               rschmierer@denittislaw.com

                               **LAW OFFICES OF TODD M. FRIEDMAN, PC**
                               Todd M. Friedman, Esq.
                               (*Pro hac Vice Application Forthcoming*)
                               21550 Oxnard St., Suite 780
                               Woodland Hills, CA 91367
                               tfriedman@toddflaw.com

                               *Attorneys for Plaintiff*

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: October 12, 2018          **DeNITTIS OSEFCHEN PRINCE, P.C.**

By:     *s/ Ross H. Schmierer*
       Ross H. Schmierer, Esq.
       Stephen P. DeNittis, Esq.
       525 Route 73 North, Suite 410
       Marlton, New Jersey 08053
       (T): (856) 797-9951
       rschmierer@denittislaw.com

       *Attorneys for Plaintiff*