## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHERYL SAUER             :        Hon. Joseph H. Rodriguez

       Plaintiff,        :        Civil Action No. 18-14933

     v.               :        **OPINION**

SUBARU OF AMERICA, INC.    :

       Defendant.     :

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) [Dkt. No. 10]. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Court will grant Defendant's Motion to Dismiss.

## I.    <u>Background</u>

This case concerns allegedly defective turbo charged engines in the following vehicles: 2014 Subaru Forester XT, 2015 Subaru Forester XT, 2016 Subaru Forester XT, 2014 Subaru WRX, 2015 Subaru WRX, 2016 Subaru WRX, 2014 Subaru WRX STi, 2015 Subaru WRX STi, and 2016 Subaru WRX STi (the "Class Vehicles"). These Class Vehicles' engines purportedly exhibit "a serious design defect that causes the engines to suffer damage due to the engines being tuned too highly" (the "Engine Defect"). [Dkt. No. 1 at ¶ ¶ 3]. According to the Complaint in this matter, Defendant, Subaru of America, Inc. ("SOA" or "Defendant"), "attempt[ed] to fix the design defect" (the "Fix") beginning in or about February 2006 during mandatory emissions recall, which was allegedly meant to resolve ignition timing issues. (<u>Id.</u> at ¶¶ 3, 8). Plaintiff, Cheryl Sauer

("Plaintiff"), alleges that during the Fix, Defendant "secretly updated the operating system . . . and detuned the Engines in an attempt to fix the damage caused by them." (<u>Id.</u> at ¶ 8). As a result, "Plaintiff's 2014 XT and other Class Vehicles began to experience Engine problems, including the Vehicles beginning to uncontrollably surge and stall while driving." (<u>Id.</u> at ¶ 10). She contends "that the damage caused by the Engines from being tuned too highly and further loss of control issues caused by the Fix represents a serious risk to drivers of the Class Vehicles and also significantly impacts the value of the Class Vehicles." (<u>Id.</u> at 5).

The Complaint provides the following additional facts: Plaintiff leased a new 2014 Subaru Forester XT on April 23, 2013. (<u>Id.</u> at ¶ 23). She was provided an express warranty along with her lease "concerning the repair and maintenance of the vehicle for the duration of the lease." (<u>Id.</u> at ¶ 25). In or about March 2016, Plaintiff brought her Class Vehicle into a Subaru Dealership for the Fix. She claims that "[i]n the process of doing the Fix, Defendant also re-tuned the Engines in an attempt to fix the over tuning defect" but did not disclose that any re-tuning would be a part of the Fix. (<u>Id.</u> at ¶ 27). Afterwards, Plaintiff's Class Vehicle allegedly began surging and stalling. (<u>Id.</u> at ¶ 28).

When Plaintiff presented this problem to Defendant, it "initially refused to analyze, correct, replace, or otherwise fix the issues with Plaintiff's Vehicle caused by the Fix," and "repeatedly failed to correct the issues caused by the Fix when presented with Plaintiff's Vehicle." (<u>Id.</u> at ¶¶ 29-30). Ultimately, Defendant offered to replace Plaintiff's Engine "as a correction to the problems caused by the Fix" but the replacement would not be available for a number of months. SOA would not otherwise replace or buyback Plaintiff's Class Vehicle. (<u>Id.</u> at ¶¶ 31-32).

Plaintiff alleges that defective engines "significantly decreased the safety, drivability, and value of Plaintiff's Vehicle;" and she and Class Members were required to either drive "an unsafe and unstable Subject Vehicle" or "leave the Subject Vehicle for multiple months without compensation until a substitute Engine could be provided, according to Defendant's representatives." (Id. at ¶¶ 14, 33). In addition, she claims that Defendant made misleading representations and conducted false advertising to "to deceive reasonable consumers like Plaintiff and other Class Members," and further actively concealed and failed to disclose its knowledge of the defects. (Id. at ¶¶ 7, 84).

On October 12, 2018, Plaintiff filed a Complaint with this Court as a putative class action against Defendant, who "engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services," and is "in the business of marketing, supplying and selling written warranties." [Dkt. No 1 at ¶ 20]. She alleges SOA is liable for: Breach of Written Warranty under the Magnuson-Moss Warranty Act ("MMWA") (Count I), Breach of Implied Warranty under the MMWA (Count II), violations of the Song-Berly Consumer Warranty Act for Breach of Express Warranty (Count III), violations of the Song-Berly Consumer Warranty Act for Breach of Implied Warranty (Count IV), violation of the California False Advertising Act (Count V), and violation of California's Unfair Business Practice Act (Count VI) [Dkt. No. 1]. Defendant filed a Motion to Dismiss for lack of jurisdiction and failure to state a claim [Dkt. No. 10]. The Motion is fully briefed and ripe for decision.

First, Defendant moves to dismiss Plaintiff's Complaint for lack of standing to bring claims related to vehicles that she has not owned or leased, or did not otherwise participate in the Fix. Next, it submits that Plaintiff fails to state a claim for plausible relief under each Count alleged in the Complaint. Lastly, Defendant contends that the

safety act preempts an order requiring SOA to notify consumers of alleged defect and that Plaintiff fails to provide an adequate basis for punitive damages. The Court will address Defendant's standing argument first.

II. Standing

**A. Standard under Fed. R. Civ. Pro. 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for "lack of subject matter jurisdiction." "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). "The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter in which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Focus v. Allegheny Cnty. Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015). When considering a facial attack, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. In re Horizon Healthcare Services Inc. Data Breach Litigation, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual

attack, such as the case here, the court may weigh and consider evidence outside the pleadings. <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000).

### B. Standing Analysis

The Constitution limits the subject matter jurisdiction of federal courts to "cases" and "controversies." <u>See</u> U.S. Art. III § 2. To establish Article III standing, a plaintiff must plead "an 'injury in fact' or an 'invasion of a legally protected interest that is concrete and particularized,' . . . a 'causal connection between the injury and the conduct complained of,' and 'a likelihood that the injury will be redressed by a favorable decision.' " <u>In re Horizon Healthcare Servs. Inc. Data Breach Litig.</u>, 846 F.3d 625, 633 (3d Cir. 2017) (quoting <u>Lujan</u>, 504 U.S. at 560–61 (1992)). <u>See also</u> <u>Anjelino v. N.Y. Times Co.</u>, 200 F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action."). In a class action context, the plaintiff must still "show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'" <u>Lieberson v. Johnson & Johnson Consumer Cos.</u>, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (quoting <u>Lewis v. Casey</u>, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)).

Here, Plaintiff brings claims relating to the following vehicles: 2014 Subaru Forester XT, 2015 Subaru Forester XT, 2016 Subaru Forester XT, 2014 Subaru WRX, 2015 Subaru WRX, 2016 Subaru WRX, 2014 Subaru WRX STi, 2015 Subaru WRX STi, and 2016 Subaru WRX STi. Defendant contends that Plaintiff lacks standing to bring claims relating to these Subaru models and model years, other than the 2014 Subaru Forester,

because (1) Plaintiff has not owned or leased these other Subaru vehicles; and (2) the service program—the "Fix"—did not apply to all vehicles she deems "Class Vehicles," specifically the 2014 or 2016 Subaru WRX, 2016 Forester XT, and 2014 through 2016 Subaru WRX STi vehicles.

Generally, a "plaintiff has standing only for claims related to products he purchased or used." David v. Volkswagen Grp. of Am., Inc., No. 17-11301, 2018 U.S. Dist. LEXIS 70284, at *7 (D.N.J. Apr. 26, 2018). Courts in this district, however, are divided on the particular issue presented here—whether "a class plaintiff who brings a claim for a product within a line of products" has standing to assert claims for those other related products. Cox v. Chrysler Grp., LLC, No. CV 14-7573, 2015 WL 5771400, at *15 (D.N.J. Sept. 30, 2015). "[S]ome courts have dismissed the remaining claims concerning the rest of the product line, holding that named plaintiffs lack standing for claims relating to products they did not purchase. Other courts, following [Haas v. Pittsburgh National Bank], have refused to dismiss claims for products that the named plaintiffs did not buy themselves." Id. (collecting cases).

In Haas, the court ruled that although plaintiff "lacked standing to pursue a particular claim, she could assert that claim in a putative class action where she did have standing to pursue two closely related claims against the same defendant." In re Gerber Probiotic Sales Practices Litig., No. CIV.A. 12-835, 2014 WL 5092920, at *5 (D.N.J. Oct. 10, 2014) (quoting Haas, 526 F.2d 1083, 1088–89 (3d Cir.1975)). Courts following Haas find dismissal of claims for products that a named plaintiff did not specifically purchase premature where "the basis for the Plaintiffs' claims [are] the same, the products [are] closely related, and the defendants [are] the same." Id.

In response to Defendant's Motion, "Plaintiff agrees to limit Class Vehicles to the 2015 WRX and 2014 and 2015 Forester with 2.0 direct injection turbo ("DIT") engines, which are the vehicles covered by the Fix," and consents to dismissal of her claims based all other named Subaru models and model years. [Dkt. No. 14 at 1, n.1]. Plaintiff further submits, however, that she has standing to bring claims relating to the remaining Class Vehicles she did not lease or own based on the principles set forth by the Third Circuit in Haas. She also stresses that the standing issue is premature and better decided at the class certification stage.

At this juncture, the principles considered in Haas and Gerber, and advanced by Plaintiff, are not present. Unlike in those cases deferring inquiry to the class certification stage, here, Plaintiff fails to allege sufficiently that the basis for her claims, relating to all Class vehicles, is the same or that the vehicle's engines are closely related. Although in her opposition Plaintiff asserts that her "claims all arise out of defects that arose in the vehicles following the Fix," the "Fix" defect is not the only basis for her claims. Plaintiff alleges in her Complaint that Class Vehicles also suffer an Engine Defect, "a serious design defect as a result of overturning engines." [Dkt. No. 1 ¶ 3]. Her claims relating to all Class Vehicles arise out of both defects.

Next, in support of its factual attack to Plaintiff's standing, Defendant submits a declaration providing that Plaintiff's FA-series engine is different from the EJ-series engines in WRX Subaru models. The two series are based on different "engine architecture and do not share interchangeable parts . . ." [Dkt. No. 10-1 at 13]. SOA also details differences in the WRX's engine management software system from the Forester XT. Therefore, despite Plaintiff's conclusion that all of the relevant engines are turbo engines and manufactured in substantially similar manner, Plaintiff has not shown that

her claims are based on identical or "closely related" model engines. See Schechter v. Hyundai Motor Am., No. CV 18-13634, 2019 WL 3416902, at *4 (D.N.J. July 29, 2019) (dismissing a plaintiff's claims to class vehicles that plaintiff did not lease because plaintiff failed "to adequately allege that the Class Vehicles all have similar powertrain components and defects, such that all three vehicular models are so closely related that standing would be conferred upon Plaintiff").

Moreover, Defendant's documents also support that the service conducted under the "Fix" differed amongst different Subaru models. (Id. at 14). Thus, Plaintiff's Complaint demonstrates that her suit is based on Subaru models that were subject to a "Fix," but fails to adequately show that it was "uniformly applied." [Dkt. No. 10-1 at 14; 10-3, Ex. A, at 2]. As such, Plaintiff does not have "standing to pursue a claim that products she neither purchased nor used did not work as advertised." Lieberson v. Johnson & Johnson Consumer Companies, Inc., 865 F. Supp. 2d 529, 537 (D.N.J. 2011); Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 280 (D.N.J. 2011). Therefore, dismissal of Plaintiff's claims as to vehicles other than the 2014 Forester XT is proper.

### III.    Motion to Dismiss

### A. Standard of Review for Failure to state a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into

consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v.

---

[1] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). Accord Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id.

Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351

(3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in

a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80

(finding that pleadings that are no more than conclusions are not entitled to the

assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of a cause of action's elements will not do."

Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations

are "enough to raise a right to relief above the speculative level on the assumption that

all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S.

at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged-

but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)).

## B. Breach of Express Warranty Claims

In Count I of her Complaint, Plaintiff alleges violations of the MMWA for breach

of express warranty, and in Count III she alleges violations of California's Song-Beverly

Consumer Warranty Act based on express warranties. Defendants first argue that

Plaintiff fails to plead her express warranty claims with sufficient detail to state a plausible entitlement to relief. [Dkt. No. 10 at 16].

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C.A. § 2310. "A claim under the MMWA relies on the underlying state law claim." Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 265 (D.N.J. 2011). Under state law, to state a claim for breach of express warranty, Plaintiff must sufficiently allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description. Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J. Stat. Ann. § 12A:2–313); Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 849 (N.D. Cal. 2012). Defendant argues that Plaintiff's Complaint is deficient because it fails to explain what promise or affirmation was made, how SOA breached that promise, or any detail regarding the alleged design defect.

According to the Complaint, Plaintiff's Class Vehicle was subject to a written warranty for "any non-conformities or defects in materials or workmanship, comprising an undertaking in writing in connection with the purchase of the Class Vehicles, to repair the Class Vehicles, or take other remedial action free of charge to Plaintiff and the Class Members . . . in the event that the Class Vehicles failed to meet the specifications set forth in said undertaking." [Dkt. No. 1 ¶ 56]. She claims, albeit vaguely, that her vehicle contained an engine defect as a result of being "tuned too highly" and a second

defect following Defendant's attempt to fix the engine. (Id. at ¶ 3). While Plaintiff need not include detailed factual allegations, she must provide more than labels and conclusions to show the grounds for her relief. Twombly, 550 U.S. at 555. Most notably here, Plaintiff's conclusions about the alleged defects and warranties fail to establish she is entitled to relief.

First, Plaintiff alleges that she was supplied with several written warranties without identifying which warranty she claims Defendant breached. [Dkt. No. 1 ¶ 6]. Defendant submits that Plaintiff's claims are based on the Limited Powertrain Warranty, [Dkt. No. 10-1 at 17], which she does not dispute. Both parties agree that the Limited Warranty covers defects in materials or workmanship. [Dkt. No. 1 ¶ 56]. To that end, even if Plaintiff has sufficiently alleged the affirmations in that warranty, Defendants contend that she fails to show breach because the express warranty does not extend to the defects at issue, as they are defects in design.

The Third Circuit has held that the plain and ordinary meaning of the term "defect[s] in . . . materials or workmanship," unambiguously excludes "design defects." Coba v. Ford Motor Co., 932 F.3d 114, 121 (3d Cir. 2019) (citations omitted). Prior to the Third Circuits ruling, a number of courts within this district, and other jurisdictions, held the same. See Cali v. Chrysler Grp. LLC, No. 10 CIV. 7606, 2011 WL 383952, at *2 (S.D.N.Y. Jan. 18, 2011), aff'd, 426 F. App'x 38 (2d Cir. 2011) ("The terms 'material,' 'workmanship,' or 'factory preparation,' . . . refer to the mechanical process of implementing [a] design."); Nelson v. Nissan N. Am., Inc., No. CIV. 11-5712, 2014 WL 7331922, at *3 (D.N.J. Dec. 19, 2014) (choosing "to join the vast weight of authority [by] holding that a workmanship and materials warranty cannot encompass a design defect

claim."); <u>Troup v. Toyota Motor Corp.</u>, 545 F. App'x 668, 668–69 (9th Cir. 2013) (same).

Plaintiff claims whether the engine defect is one of design or manufacture is not properly decided on a motion to dismiss. At this stage, the Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Prior to discovery, some courts have decided that "the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and [when] sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." <u>Alin v. Am. Honda Motor Co.</u>, No. CIV A 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010). Taking Plaintiff's allegations as true in this case, the Complaint explicitly pleads the engine defect at the time of sale is a design defect. Plaintiff's Complaint concludes: the Class Vehicle's engine has "a serious <u>design defect</u>," and that the Fix was an attempt to cure that "<u>design defect</u>." [Dkt. No. 1 ¶ 3 (emphasis added)]. There are no allegations supporting that the engine defect was also a manufacturing defect or otherwise a defect covered under a warranty for defects in workmanship and materials.

Plaintiff contends, however, that "defects exhibited by Plaintiff's Vehicle following the Fix could be associated with a failure in the workmanship in applying the Fix" and thus, precluding dismissal without discovery. [Dkt. No. 14 at 6 n.4]. As stated by the Third Circuit, a "'workmanship' defect is a deficiency in the execution of a product's assembly or construction." <u>Coba</u>, 932 F.3d at 121. As to the defect resulting from the "Fix," Plaintiff pleads the following: (1) the fix was an attempt to remedy the Engine Defect "that rendered the Class Vehicles unusable due to intermittent stalling

and sudden accelerating;" (2) "[i]n the process of doing the Fix, Defendant [] re-tuned the Engines;" and (3) Defendant "updated the operating system on the Class Vehicles." (Id. at ¶¶ 3, 8, 27). While the Fix defect is not explicitly pled as one of design, like the Engine Defect, Plaintiff alleges that it was meant to cure a design problem. To be sure, the Complaint lacks much information as to the defect in general, including lack of support that the Fix Defect was a materials defect. Notwithstanding, whether that defect is pled as both design and workmanship at this time, does not save Plaintiff's warranty claim.

Even if the Complaint sufficiently alleges the Fix was the type of defect covered under warranty, Defendant further contends Plaintiff sought repair after the warranty expired. In general, "an express warranty does not cover repairs made after the applicable time . . . ha [s] elapsed." Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 518 (D.N.J. 2008) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 616 (3d Cir. 1995)); see also Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022–23 (9th Cir. 2008).[1] The limited warranty on Plaintiff's vehicle extends for a period of 5 years or 60,000 miles, whichever comes first. (Id. at ¶ 20).[2] According to Plaintiff, she "was provided an express warranty concerning the repair and maintenance of the vehicle for

---

[1] Plaintiff argues in opposition that even if her claim was untimely that she has pled factors giving rise to the tolling of her claim and may avoid durational limits of Defendant's warranty by alleging it is unconscionable. Although "[w]here the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable," as currently pled, the Complaint does not state factual allegations supporting unconscionability, in fact, Plaintiff fails to allege facts supporting that the Engine Defect, or Fix defect, were latent. Skeen v. BMW of N. Am., LLC, No. 2:13-CV-1531, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014).

[2] Despite Plaintiff's contentions, the Court may consider the language of the written warranty as it is a document integral to the Complaint, which Plaintiff relies on. Higgins, 281 F.3d at 388. Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1131 (N.D. Cal 2010)(considering "the actual terms of [defendant's] one-year limited warranty . . . under the incorporation by reference doctrine").

the duration of the lease," and she discovered the engine defect in March 2016. (Id. at ¶ 25). Notably, her Complaint fails to allege the mileage of her vehicle at any point in time. Therefore, even accepting Plaintiff's allegations as true she has failed to allege facts that establish her Class Vehicle was covered under the express warranty at the time she discovered the defect or sought repairs.

Because Plaintiff has no claim under state law for breach of express warranty, Count I fails under the MMWA. Furthermore, where "Plaintiffs have not alleged any facts that the vehicle had problems or any covered systems failed within the express warranty period," they have failed to state a plausible claim for breach of the express warranty under the Song–Beverly Act. Beshwate v. BMW of N. Am., LLC, No. 1:17-CV-00417, 2017 WL 4410169, at *8 (E.D. Cal. Oct. 4, 2017). Therefore, Plaintiff's claim under California's Song-Beverly Act similarly fails. Thus, the Court will dismiss Count I and Count III.

## C. Breach of Implied Warranty

Plaintiff also alleges claims for breach of implied warranty pursuant to the MMWA under Count II, and pursuant to the Song-Beverly Consumer Warranty Act under Count IV. Defendant argues that these claims fail because Plaintiff's written warranty limited the scope of implied warranties to the same duration of that express warranty, which is noted above. [Dkt. No. 10-1, 22].

The MMWA provides that "implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C.A. § 2308. Plaintiff does not contest the enforceability of the written warranty's limitation on implied warranties in this regard. Additionally,

under the Song Beverly-Act, the "duration of an implied warranty of merchantability is one year if the express warranty is one year or more." <u>Tietsworth v. Sears</u>, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010).

Therefore, having found Plaintiff has failed to show her express warranty was in effect prior to when she experienced any problems with her engine, her breach of implied warranty claims under the MMWA and Song-Beverley Act also fail. The Court will dismiss Count II and Count IV.

### D. Statutory Consumer Fraud Claims

Defendant submits that Plaintiff's statutory fraud claims fail for several reasons. At the outset, it argues that Plaintiff does not plead fraud with the particularity required under Fed. R. Civ. Pro. 9(b). For the reasons that follow, the Court agrees with the Defendant and therefore, it is unnecessary to address the additional arguments Defendant advances in its moving brief.

Here, Plaintiff alleges two statutory consumer fraud claims under California law: Count V, which alleges violation of the California False Advertising Act, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); and Count VI, alleges violations of the Unfair Business Practice Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. The FAL proscribes "mak[ing] or disseminat[ing] . . . any statement . . . which is untrue or misleading, and which is known, or by the exercise of reasonable care should be known, to be untrue or misleading . . . with intent directly or indirectly to dispose of real or personal property." <u>Stewart</u>, 304 F. Supp. 3d at 906 (citing § 17500). "The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" <u>Sloan v. Gen. Motors LLC</u>, 287 F. Supp. 3d 840, 865 (N.D. Cal. 2018), <u>order clarified,</u> No. 16-CV-07244, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), and <u>on</u>

reconsideration, 2020 WL 664033 (N.D. Cal. Feb. 11, 2020) (citing § 17200). Under both statutes, claims sounding in fraud, like those asserted here, are subject to the heightened pleading standards in Rule 9(b). Langan v. United Servs. Auto. Ass'n, 69 F. Supp. 3d 965, 984 (N.D. Cal. 2014).

Rule 9(b) requires that plaintiff plead the details of the alleged "circumstances" of the fraud with specificity sufficient to "place defendants on notice of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). To that end, "[a]lthough the rule states that [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally, and does not require the plaintiff to plead every material detail of the fraud, the plaintiff must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 590–91 (D.N.J. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (internal quotations and citations omitted)). At a minimum, a plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." Lum v. Bank of Am. ., 361 F.3d 217, 224 (3d Cir. 2004).

In this case, Plaintiff's fraud based claims are based on both misrepresentations and omissions. It is also important to note that Plaintiff alleges claims against Defendant based on two alleged defects. The first is the Engine Defect resulting from an allegedly over tuned engine, and the other is the Fix Defect resulting from SOA's attempt to fix the Engine Defect.

With regard to misrepresentations, Plaintiff fails to meet the minimum requires of Rule 9(b). Defendant argues that the "Complaint fails to identify any actual statement in

any actual advertisement seen by Plaintiff prior to purchasing her vehicle." [Dkt. No. 10-1 at 28]. Although Plaintiff claims that they have pled Defendant "misrepresented that the Engine did not suffer from defects and that the Fix had not caused further problems," her Complaint is devoid of even general allegations about these supposed misrepresentations, like when they were made, or where they were made. In fact, Plaintiff baldly alleges that "Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant . . . made false representations to Plaintiff and other putative class members in order to not make repairs to these vehicles," and that Defendant advertised that the Class Products would be of particular quality. [Dkt. No. 1 ¶¶ 87, 83]. But nothing in the Complaint identifies the actual content of any statements made by Defendant. [Dkt. No. 1 ¶ 83]. These allegations are, thus, insufficient to "place defendants on notice of the precise misconduct with which they are charged." <u>Seville Indus. Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984). As such, they fail to state a claim under the heightened pleading standards.

As to omissions, the Complaint states that SOA, "[p]rior to the manufacture and sale of the Class Vehicles, Subaru knew of the Engine Defects and issues relating to the Fix through internal sources, testing, and consumer complaints available online and in owner forums. Yet despite this knowledge, Subaru failed to disclose and actively concealed the Engine Defect from Class Members and the public . . ." [Dkt. No. 1 ¶ 7]. But "[n]othing in the Complaint provides factual support for [SOA's] alleged knowledge and concealment of the defect." <u>Gotthelf v. Toyota Motor Sales, U.S.A., Inc.</u>, 525 F. App'x 94, 104 (3d Cir. 2013). "Although . . . plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation

claim," Plaintiff's general and conclusory averments pertaining to Defendant's knowledge of, and failure to disclose, the alleged defects are inadequate. <u>Feldman v. Mercedes-Benz USA</u>, LLC, No. 2:11-CV-00984, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) (citing <u>Falk v. Gen. Motors Corp.</u>, 496 F. Supp. 2d 1088, 1098–99 (N.D.Cal. 2007)).

First, Plaintiff does not provide facts to support her assertion that SOA "should have known about the defect based on [] complaints." <u>Gotthelf</u>, 525 F. App'x at 104.[3] Although Plaintiff alleges that "various complaints" are "online and multiple consumers have complained across the country" she does "not provide any allegations regarding the method by which complaints were recorded and transmitted to management, or otherwise reviewed or received." <u>Resnick v. Hyundai Motor Am., Inc.</u>, No. CV1600593, 2017 WL 1531192, at *17 (C.D. Cal. Apr. 13, 2017). Lastly, she fails to identify the contents of the complaints, and consumer complaints that lack specificity as to what was reported to the defendant or how, are insufficient. <u>See</u> <u>Id.</u>; <u>Cadena v. Am. Honda Motor Co.</u>, No. CV184007, 2019 WL 3059931, at *12 (C.D. Cal. May 29, 2019). Thus, the Court cannot find factual support that any complaints establish Defendant had knowledge of either defect.

Additionally, Plaintiff fails to establish knowledge through the testing or "other internal sources" she refers to. She alleges that SOA would have knowledge of the defect from "pre-release design and testing information." [Dkt. No. 1 ¶ 43]. The Complaint,

---

[3] Plaintiff argues that she has pled similar factors of knowledge, materiality, and inducement as plaintiff in <u>Dewey v. Volkswagon</u>, 558 F. Supp.2d 505, 527-28 (D.N.J. 2008), and sufficiently pled fraud based on omission. Defendants in Dewey did not challenge the sufficiency of the alleged omission.

however, contains no factual support as to what tests SOA performed, or how these tests potentially reveal either defect. Alleging that tests, including testing in response to consumer complaints, were done, without more, is merely conclusory.

Plaintiff also alleges that "Subaru issued an 'emissions recall' ("the Recall") purported to resolve an issue in the ignition timing. In reality, this recall secretly updated the operating system on the Class Vehicles and detuned the Engines in an attempt to fix the damage caused by them," and "defendant's implementation of the Fix without disclosing the full nature of it . . . caused further defects." [Dkt. No. 1 ¶ 8]. According to Plaintiff's Complaint, the Fix was issued on or about February 2016, but she purchased her Subaru Vehicle in 2013. (Id. at ¶ 3, 23). Thus, Plaintiff's allegations of Defendant's knowledge of the Fix Defect, prior to the manufacture and sale of class vehicles is illogical. Additionally, the Third Circuit in Gotthelf noted that a defendant's Customer Support letter did not support finding "that [defendant] had knowledge of, and concealed, the defect. . . . [it] informed customers of the problem." 525 F. App'x 94, 104 (3d Cir. 2013). Likewise, here, accepting Plaintiff's allegations as true, the "Recall" informed Plaintiff and the public in general of the original alleged Engine Defect.

Furthermore, Plaintiff's allegation that Defendant failed to disclose that they were updating the operating system on the Class Vehicles and detuning the engine is unsupported. The service bulletin, which is integral to the Complaint, did inform Subaru owners that SOA would be reprogramming the ECM. See [Dkt. No. 10-3]. Finally, the Complaint fails to demonstrate "how and when [SOA] should have conveyed to them the claimed concealed information." Snyder v. Ford Motor Co., No. C-06-0497, 2006 WL 2472187, at *3 (N.D. Cal. Aug. 24, 2006). Thus, "[n]othing in the Complaint provides factual support for [SOA's] alleged knowledge and concealment of the defect[s]."

<u>Gotthelf</u>, 525 F. App'x at 104. Therefore, Plaintiff's allegations are deficient, and inadequate to state a claim under Rule 9(b). Accordingly, the Court will dismiss Count V and VI.

IV.    Conclusion

For the forgoing reasons, Defendant's Motion to Dismiss [Dkt. No. 10] will be granted.

An appropriate Order shall issue.

Dated: March 31, 2020

                ___/s/ Joseph H. Rodriguez_____
                Hon. Joseph H. Rodriguez,
                UNITED STATES DISTRICT JUDGE