**DeNITTIS OSEFCHEN PRINCE, P.C.**
Ross H. Schmierer, Esq. (RS-7215)
525 Route 73 North, Suite 410
Marlton, NJ 08053
(856) 797-9951
rschmierer@denittslaw.com

**LAW OFFICES OF TODD M. FRIEDMAN, PC**
Todd M. Friedman, Esq.
(*Pro Hac Vice Application Forthcoming*)
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
tfriedman@toddflaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL SAUER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUBARU OF AMERICA, INC.,<br><br>Defendant. | Case No.: 1:18-cv-14933-JHR-AMD<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Cheryl Sauer, individually and on behalf of all others similarly situated, alleges the following:[1]

## NATURE OF THE CASE

1.      Plaintiff CHERYL SAUER bring this action individually for herself and on behalf of all persons who purchased or leased in California the 2014 Subaru Forester XT (the "Class  Vehicles") by SUBARU OF AMERICA, INC. ("Subaru"

---

[1] On March 31, 2020, the Court granted Defendant's Motion to Dismiss the Complaint [Dkts. 17 & 18].  The Order did not state that dismissal was with prejudice or that Plaintiff did not have leave to amend her Complaint, particularly given that the Complaint was the initial Complaint in this matter to which no prior amendments had been made and the right to amendment had been requested in Plaintiff's Opposition and not otherwise addressed.  Thus, in absence of any Order barring it, Plaintiff files this First Amended Complaint as a matter of right to cure the factual pleading deficiencies identified by the Court.

or "Manufacturer") which were subject to a mandatory emissions recall in 2016 that damaged the vehicles, as described below.

2.      This action is brought to remedy violations of law in connection with Subaru's applying of an undisclosed fix ("the Fix") during a "claimed" mandatory emissions recall to the Class Vehicles in an attempt to detune the Class Vehicles that rendered the Class Vehicles unusable due to intermittent stalling and sudden accelerating following the application of the Fix.  The Fix was initially issued on or about February 2016.

3.      Additionally, the Fix was uniformly applied to the Class Vehicles which did not vary from vehicle to vehicle in application.

4.       Plaintiff believes that the damage caused by the Fix represents a serious risk to drivers of the Class Vehicles and also significantly impacts the value of the Class Vehicles.

5.      Prior to the implementation of the Fix, Defendant knew that it posed a serious risk to the usability of Class Vehicles it was implemented in. Yet despite this knowledge, Subaru failed to disclose and actively concealed the risk the Fix posed to Class Members, without remedying the internal issue.

6.      Further, the Fix was issued as an "emissions recall" purported to resolve an issue in the ignition timing. In reality, this recall additionally updated the operating system on the Class Vehicles and detuned the engines of the Class Vehicle, resulting in the intermittent stalling and sudden acceleration experienced by Plaintiff.

7.      The Recall was not for emissions, but by claiming it was an "emissions recall," a Class Member would be unable to renew their vehicles registration without taking in their Vehicles for servicing.  Subaru forced the Recall on consumers by threatening the ability of Class Members' to renew their vehicle registrations.

8.      As a result of the undisclosed operating system patch included in the

Recall, Plaintiff's 2014 XT and other Class Vehicles began to experience problems, including the vehicles beginning to uncontrollably surge and stall while driving.

9.      When Plaintiff, and other putative Class members, attempted to bring this issue to Defendant caused by the Fix, Defendant disingenuously tried to shift blame away from the Fix and failed to provide a remedy to the problem. Based on Plaintiff's information as a salesman for Defendant, Defendant knew all along that this problem was widespread, and was not able to be remedied, despite which they nevertheless kept selling to consumers, like Plaintiff.

10.      Plaintiff brought the vehicle to seller and/or other authorized service dealers of manufacturer to attempt repair the vehicle, but Defendant's representatives failed to offer a solution to the problems caused by the Fix.

11.      Plaintiff and Class Members were made to either drive an unsafe and unstable Subject Vehicle as caused by the Fix, or were required to leave the Class Vehicles for multiple months without compensation until a substitute Engine could be provided, according to Defendant's representatives.

12.      As a result of Defendant's alleged misconduct, Plaintiff and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the problems caused by the Fix, and Defendant has not provided a permanent remedy for these problems. Furthermore, Plaintiff and the Class Members justifiably lost confidence in the Class Vehicles' reliability and said damages have substantially impaired the value of the Class Vehicles to Plaintiff and the putative Class.

## JURISDICTION & VENUE

13.      There is original federal subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. §1332(d)(2), which explicitly provides for the original jurisdiction of federal courts in any class action in which at least 100

members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

14.     In the case at bar, there are at least 100 members in the proposed Class, the total claims of the proposed Class members are in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiff seeks to represent a California class of consumers, establishing minimum diversity.

15.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) because the sole Defendant resides in this judicial district.

## PARTIES

16.     Plaintiff, CHERYL SAUER ("Plaintiff"), is an individual who leased subject vehicle in the State of California.

17.     SUBARU OF AMERICA, INC. ("Defendant"), is a corporation, authorized to do business in the State of California, and engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services. Defendant is also in the business of marketing, supplying and selling written warranties to the public at large through a system of authorized dealerships. Defendant does business in all counties of the State of California.

18.     The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

19.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

20.     As stated herein, Plaintiff entered a lease agreement for a new 2014 Subaru Forester XT on April 23, 2013.

21.     Plaintiff leased this vehicle for personal and family use.

22.     On or about February 2016, Plaintiff received a letter from Defendant regarding the Fix, stating that there was an emissions recall on Plaintiff's Vehicle because of a problem causing elevated cylinder temperatures and pressures that could cause a rough idle, engine noise, and erosion of the spark plugs and possible engine damage.

23.     The letter further stated that the Fix would be a modification to the Engine Control Module (ECM) software logic to fix the issue of when engine combustion occurs prior to spark ignition.

24.     The letter also stated that because it was classified as an emissions recall, Plaintiff would need to have the Fix performed or else she would be unable to register her Vehicle and continue driving it in the State of California.

25.     Plaintiff brought her vehicle into the dealership for the mandatory emissions service, referred to above as the Fix, around March 2016.

26.     In the process of doing the Fix, Defendant performed services on the ECM besides those stated and attempted to re-tune the engine in an attempt to fix other undisclosed issues. Defendant did not disclose that it was generally re-tuning the ECM besides the narrow scope laid forth in the letter as part of the Fix.

27.     Following the Fix being applied, Plaintiff's Vehicle began exhibiting unexpected surging and stalling.

28.     Plaintiff presented this problem to Defendant, but Defendant initially refused to analyze, correct, replace, or otherwise fix the issues with Plaintiff's Vehicle caused by the Fix.

29.     After multiple complaints by Plaintiff, Defendant finally offered to potentially replace the Engine in Plaintiff's Vehicle as a correction to the problems caused by the Fix, however also told Plaintiff that the replacement would not be available for multiple months.

30.     Defendant further refused to replace or buyback Plaintiff's Vehicle.

31.     The damage caused by the Fix significantly decreased the safety, driveability, and value of Plaintiff's Vehicle.

32.     Defendant has never disclosed the actual nature of the work performed as part of the Fix and has concealed this material fact to this day, despite numerous Class Vehicles experiencing significant usability problems similar to Plaintiff's Vehicle following the Fix.

## CLASS ALLEGATIONS

33.     Plaintiff brings a Class claim on behalf of herself and all others similarly situated members of the proposed Class defined as follows:

All California Residents who purchased or leased a Class Vehicle in California which had the Fix applied to it.  A "Class Vehicle" is defined as the 2014 Subaru Forester XT.

34.     Plaintiff represents, and is a member of, the Class, consisting of all California Residents who purchased or leased a Class Vehicle which had the Fix applied to it.

35.     Defendant, its employees, and agents are excluded from the Class. Plaintiff does not know the number of members in The Class, but believes the Class members number in the hundreds, if not more.  Thus, this matter should be

certified as a Class Action to assist in the expeditious litigation of the matter.

36.     The Class are so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of the Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Classes includes thousands of members.  Plaintiff alleges that the Class members may be ascertained by the records maintained by Defendant.

37.     The problem that Plaintiff and the Class Members experienced was the result of the undisclosed modifications made as part of the Fix.  As various complaints of this issue are present online and multiple consumers have complained across the country, it is clear that Subaru knew or should have known that the undisclosed problems that were present with the Fix, which could and did cause damage to the Class Vehicles as well as intermittent stalling and accelerating of Class Vehicles. Yet, Subaru continued to deny the existence of this issue, thus presenting a continued risk to the Class members' health and safety.

38.     Prior to issuing the Fix, Subaru knew of the actual nature and effect of the Fix through its own analysis and internal documentation regarding the work to be performed as part of the Fix.

39.     Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant caused damage to the Class Vehicles from the undisclosed maintenance done as part of the Fix.  This caused the Class members to suffer a loss of value for their Class Vehicles.

40.     Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

(a)     Whether Defendants made misrepresentations with respect to the Fix

to be performed on the Class Vehicles;

(b)     Whether Defendants profited from the sale of the Class Vehicles that suffered from the Fix;

(c)     Whether Defendants violated California Bus. & Prof. Code § 17200, et seq.;

(d)     Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

(e)     Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and Classes Members; and

(f)     The method of calculation and extent of damages for Plaintiff and Class Members.

41.     As a person that leased a Class Vehicle that suffered damage by the Fix, Plaintiff is asserting claims that are typical of the Class.

42.     Plaintiff will fairly and adequately protect the interests of the members of The Class.  Plaintiff has retained attorneys experienced in the prosecution of class actions.

43.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

44.     The prosecution of separate actions by individual Class members

would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

45.   Defendant has acted or refused to act in respects generally applicable to The Class thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

## COUNT I
## Violation of Unfair Business Practices Act
## (Cal. Bus. & Prof. Code §§ 17200 et seq.)
### *Individually, and on behalf of the Class*

46.   Plaintiff incorporates by reference each allegation set forth above.

47.   Actions for relief under the unfair competition law may be based on any business

act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendants' business practices and the alleged harm--that is, evidence that the defendants' conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the Defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

48.   California Business & Professions Code § 17200 prohibits any "unfair . . business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to

consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

49.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

50.    Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to deceive them regarding the specific work to be performed as part of the Fix and the damage to their Class Vehicles caused by Defendant's Fix.  Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

51.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Vehicles would be subject to an emissions recall which would reprogram the ECM to fix an issue regarding engine combustion prior to spark ignition, when in reality the recall instead damaged the Class Vehicles rendering them unsafe and unusable.  In fact, knowing the true nature and risks of the Fix, Defendant unfairly profited performing the Fix on vehicles it had previously sold.  Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

52.    Finally, the injury suffered by Plaintiff and members of the Class is

not an injury that these consumers could reasonably have avoided.  After Defendant falsely represented the nature of the Fix, Plaintiff and Class members suffered injury in fact due to Defendant's performance of the Fix on their vehicles which resulted in immediate damage to the usability and safety of the Class Vehicles. Prior to performing the Fix, Defendant failed to take reasonable steps to inform Plaintiff and Class members the true steps to be performed as part of the Fix and that the Fix would result in the Class Vehicles being rendered unsafe. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to agree to have the Fix performed.  Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

53.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

54.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

55.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

56.    Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff agreed to have the Fix performed because of the failure by Defendant to disclose the actual work to be performed and risks of the Fix. Defendant's implementation of the Fix caused the Class Vehicles to experience significantly problems that rendered them to be unsuitable

to be driven. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

57.     Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

58.     Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## MISCELLANEOUS

59.     Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or that all such obligations or conditions are excused.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and members of the class respectfully pray for the following relief:

a.     An order certifying the Class under Fed. R. Civ. P. 23 and appointing Plaintiff as Representative of the Class;

b.     An order certifying the undersigned counsel as Class Counsel;

c.     An order requiring Defendant, at its own cost, to notify all Class Members of the fraudulent and deceptive conduct herein;

d.     Actual damages suffered by Plaintiff and Classes Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members

from the sale and lease of Class Vehicles which were damaged from the Fix during the relevant class period;

e.      Any and all statutory enhanced damages;

f.      All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

g.      Pre- and post-judgment interest; and

h.      All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: April 30, 2020                    **DeNITTIS OSEFCHEN PRINCE, P.C.**

By:     /s/ Ross H. Schmierer
        Ross H. Schmierer, Esq.
        525 Route 73 North, Suite 410
        Marlton, New Jersey 08053
        (T): (856) 797-9951
        rschmierer@denittislaw.com

**LAW OFFICES OF TODD M. FRIEDMAN, PC**
        Todd M. Friedman, Esq.
        (*Pro hac Vice Application Forthcoming*)
        21550 Oxnard St., Suite 780
        Woodland Hills, CA 91367
        tfriedman@toddflaw.com

        *Attorneys for Plaintiff*

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: April 30, 2020                    **DeNITTIS OSEFCHEN PRINCE, P.C.**


By:     <u>*s/ Ross H. Schmierer*</u>
        Ross H. Schmierer, Esq.
        Stephen P. DeNittis, Esq.
        525 Route 73 North, Suite 410
        Marlton, New Jersey 08053
        (T): (856) 797-9951
        rschmierer@denittislaw.com

        *Attorneys for Plaintiff*

14

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on April 30, 2020, I caused a true and correct copy of the

foregoing First Amended Complaint to be served on all counsel via CM/ECF.

Dated: April 30, 2020                    **DeNITTIS OSEFCHEN PRINCE, P.C.**


                                 By:    <u>*s/ Ross H. Schmierer*</u>
                                        Ross H. Schmierer, Esq.
                                        Stephen P. DeNittis, Esq.
                                        525 Route 73 North, Suite 410
                                        Marlton, New Jersey 08053
                                        (T): (856) 797-9951
                                        rschmierer@denittislaw.com

                                        *Attorneys for Plaintiff*